# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01659-SCT

*STATE OF MISSISSIPPI*

*v.*

*BAYER CORPORATION, BAYER
PHARMACEUTICALS CORPORATION AND
BAYER HEALTHCARE, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2008 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | D. RONNIE MUSGROVE |
| | J. LERAY McNAMARA |
| | FRANK KOLB |
| | GEORGE W. NEVILLE |
| | WILSON DANIEL "DEE" MILES, III |
| | ANDY LOWRY |
| ATTORNEYS FOR APPELLEES: | MICHAEL P. DOSS |
| | WILLIAM F. GOODMAN, III |
| | STEVEN D. ORLANSKY |
| | RICHARD D. RASKIN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 04/15/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     The State of Mississippi filed suit in the Chancery Court of the First Judicial District
of Hinds County against more than eighty pharmaceutical manufacturers, including Bayer
Corporation, Bayer Pharmaceuticals Corporation, and Bayer Healthcare, LLC ("Bayer").

The State alleged that each of the defendants had fraudulently misrepresented the average wholesale prices (AWP) of drugs provided to beneficiaries of the Mississippi Medicaid program, causing the State to overpay drug providers.

¶2. After investigating the State's claim, two special masters appointed by the trial court concluded that a 2001 Settlement Agreement between the State and Bayer made Bayer unique among the defendants, and that because the State had failed to plead around the 2001 Settlement Agreement, its claims against Bayer should be dismissed pursuant to Rules 12(b)(6) and 9(b) of the Mississippi Rules of Civil Procedure. Following the special masters' recommendation to dismiss for failure to state a claim upon which relief can be granted, the chancellor dismissed with prejudice the State's claims against Bayer. The State appeals that decision.

**FACTS**

¶3. In 2001, the State of Mississippi and Bayer Corporation entered into a Settlement Agreement after federal officials and forty-seven states had alleged that, during the time period of January 1993 through August 1999, Bayer Corporation had misrepresented the prices at which it had sold certain drugs to the drug providers of those states. In the ensuing Settlement Agreement, Bayer denied that it had engaged in any fraudulent conduct, and noted that it had entered into the settlement agreement in 2001 solely "to avoid the delay, uncertainty, inconvenience and expense of protracted litigation of claims."

¶4.     The Settlement Agreement was limited to "covered conduct," which related to Bayer's alleged actions regarding *qui tam* drugs.[1]  In exchange for a release of any civil or administrative claims related to the "covered conduct," Bayer paid Mississippi $48,608.09 and agreed to provide the State "with true pricing information that accurately reflects the prices at which actual purchasers buy the drug and biological products sold by Bayer" for a period of five years, commencing on the date of the settlement agreement.

¶5.     On October 20, 2005, four years after entering into the Settlement Agreement with Bayer, the State filed the complaint in this case against Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare, LLC, and more than eighty other pharmaceutical manufacturers, alleging that each defendant had misrepresented the AWPs of drugs sold to drug providers of Mississippi.  Specifically, the State alleged that the AWP is a vital part of the formula used by the State's Medicaid program to establish the amount of reimbursement due from that program to drug providers, and that, as a consequence of the drug manufacturers' misrepresentation of the AWPs, the State had reimbursed the drug providers of Mississippi at a higher rate than necessary, resulting in monetary damages to the State and its taxpayers.  The actual causes of action alleged by the State in the first amended complaint are State Medicaid fraud, deceptive trade practices, and common-law fraud.

---

[1] A *qui tam* action is "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." *Black's Law Dictionary* 1282 (8th ed. 2004).  The referenced *qui tam* drugs included (1) Koate-HP Antihemophilic Factor (Human), (2) Kogenate Antihemophilic Factor (Recombinant), (3) Konyne-80 Factor IX Complex (Human), (4) Gamimune N, 5% Immune Globulin Intravenous (Human, 5%), (5) Gamimune N, 10% Immune Globulin Intravenous (Human, 10%), and (6) Thrombate III Antithrombin III (Human).

¶6.    On June 1, 2006, Bayer moved to dismiss the State's claim against the Bayer

defendants pursuant to Mississippi Rule of Civil Procedure 12(b)(6), claiming that the 2001

Settlement Agreement barred the State's claims, and that the State had failed to plead fraud

with the particularity required by Mississippi Rule of Civil Procedure 9(b). The special

masters recommended granting Bayer's motion and entered Report, Recommendation and

Order No. 2 (R&R No. 2) on July 28, 2006. R&R No. 2 is as follows:

> First, contrary to the State's assertion, the plain language of the release is not limited to claims based on fraud. Rather, the release covers 'any civil or administrative monetary claim, action, suit or proceeding the State has or may have under any source of law for the Covered Conduct.' This language plainly requires the dismissal of all claims for pre-settlement conduct pertaining to the six Qui Tam Drugs. *All claims as to those drugs are dismissed with prejudice.*
>
> Second, the State has pleaded no basis for a claim relating to pre-settlement conduct as to products other than the Qui Tam Drugs. The only mention in the Complaint of any Bayer products occurs in Exhibit B, which refers to AWP data on three products – Koate, Kogenate, and Gamimune – each of which is a Qui Tam Drug covered by the release. Further, the settlement was preceded by a broad based investigation of Bayer led by the federal government and joined by 47 states. Had concerns arisen about price reporting on products other than the six Qui Tam Drugs, we trust that those concerns would have been addressed in the course of the investigation and settlement. In any event, absent any specific allegation of wrongdoing as to Non-Qui Tam Drugs, we find no basis for the State's claims relating to the pre-settlement period to proceed at this point. *If at a later date the State has evidence the comprehensive investigation previously made against Bayer that resulted in the settlement should have included other drugs for the time prior to 2001, the State may bring a new action at that time. All claims for Bayer drugs other than the six Qui Tam drugs prior to 2001 are dismissed without prejudice.*
>
> Third, and finally, the State has not pleaded a claim with respect to the post-settlement time period. The settlement requires Bayer to report to the State on a quarterly basis the average sales price for every one of its drugs. These reports are designed to provide the State with 'true pricing information that accurately reflects the prices at which actual purchasers buy the drug and biological products sold by Bayer.' Absent any allegation that Bayer has not complied with this requirement, the State's claims – to the extent that they are

4

directed at the post-settlement time period – are moot. *Those claims are thus dismissed with prejudice.*

(Emphasis added.)

¶7. On September 5, 2006, the special masters entered Report, Recommendation and Order No. 16 (R&R No. 16), granting the defendants' motion for a more definite statement. R&R No. 16 stated:

> Plaintiff, within twenty (20) days of this Order, shall file its amended complaint to comply with Rules 8, 9, and 11 and, at a minimum, shall plead as to each Defendant the specific drug(s) in issue, and if ascertainable, the allegedly fraudulent AWP(s) for each such drug, and the basis for alleging each such AWP was fraudulent.

¶8. Rather than objecting to R&R Nos. 2 and 16, the State filed its first amended complaint on October 5, 2006, alleging that Bayer had inflated its AWPs by at least 17%, knowing that the State would rely on the inflated AWP to establish the reimbursement due to drug providers. The State also listed in Exhibit A to the amended complaint thirty-one drugs marketed and sold by Bayer that allegedly had given rise to the State's causes of action.

¶9. Notwithstanding the State's amended complaint, the chancery court adopted R&R No. 2 in its entirety on October 10, 2006, dismissing all of the State's claims against Bayer. All claims to post-settlement conduct regarding any drug marketed and sold by Bayer and all claims related to presettlement conduct related to *qui tam* drugs were dismissed with prejudice, and all claims stemming from presettlement causes of actions regarding drugs other than *qui tam* drugs were dismissed without prejudice.

¶10.   On November 13, 2007, Bayer moved to dismiss the amended complaint, contending that, although the State had the right to refile a complaint for claims stemming from presettlement conduct related to drugs other than the *qui tam* drugs, it had failed to plead fraud with the particularity required by Rule 9(b) of the Mississippi Rules of Civil Procedure. Bayer alleged that the State's amended complaint "merely list[ed] the names of several Bayer drugs, along with a boilerplate allegation – made as to all defendants – that Bayer's AWPs were 'at least 17%' above the 'true Average Wholesale Price in the marketplace,'" and that the State's "boilerplate allegations of fraud as to Bayer in the Amended Complaint do not suffice to plead around the preclusive effect of Bayer's 2001 Settlement or the Court's prior rulings dismissing the State's claims." Bayer also noted that, because the amended complaint failed to include "specific allegation[s] of wrongdoing as to non-Qui Tam Drugs[,]" and because there was no explanation in the amended complaint for why "the comprehensive investigation previously made against Bayer that resulted in the settlement should have included other drugs for the time prior to 2001[,]" dismissal pursuant to Rules 9(b) and 12(b)(6) was proper.

¶11.   On February 25, 2008, Aventis Pharmaceuticals, Inc., filed a motion for judgment on the pleadings, pursuant to Mississippi Rule of Civil Procedure 12(c), on behalf of all defendants in the action.   In response, the special masters entered Report and Recommendation No. 33 (R&R No. 33) denying the motion by noting that the State's amended complaint had cured any specificity defects that had existed in the State's original complaint, and that additional specificity was not required.

6

¶12. Notwithstanding R&R No. 33, the special masters entered Report and Recommendation No. 35 (R&R No. 35) on April 2, 2008, granting Bayer's individual motion to dismiss pursuant to Mississippi Rules of Civil Procedure 9(b) and 12(b)(6). The special masters opined that, after R&R No. 2, the State's only surviving causes of action were those stemming from presettlement conduct related to non-*qui tam* drugs, and that, because the State had failed to provide the special masters evidence that the comprehensive investigation leading to the 2001 Settlement Agreement should have included drugs other than the *qui tam* drugs, dismissal of those claims was proper.

¶13. The court entered an order adopting R&R No. 35 in its entirety, dismissing all of the State's claims against Bayer. From this final order, the State filed a timely appeal.[2]

## ISSUES

¶14. The issues presented by the parties are: (1) whether the trial court erred in granting Bayer's Rule 12(b)(6) motion to dismiss the State's presettlement claims regarding non-*qui tam* drugs, and (2) whether the trial court erred in finding that the 2001 Settlement Agreement barred the State's claim for damages related to presettlement claims regarding non-*qui tam* drugs. The State couches its argument as follows:

1. The trial court erred in holding the State to a heightened pleading standard based on a previous settlement agreement which should not have been considered at the motion to dismiss stage.

---

[2] Bayer was the sole remaining defendant in this action after the chancery court transferred all other defendants to the Chancery Court of Rankin County; thus, the order dismissing each of Bayer's claims was a final and appealable order under Mississippi Rule of Civil Procedure 54(b). M.R.C.P. 54(b).

7

2. The trial court erred in finding the 2001 settlement agreement barred the State's claims for drugs not subject to the release.

Bayer couches its argument as follows:

1. The State released any presettlement claims concerning the *qui tam* drugs as part of its 2001 Settlement Agreement with Bayer.

2. The State has no viable claims related to the post-settlement period for any Bayer products.

3. The first amended complaint alleges no viable claims as to the presettlement period for non-*qui tam* Drugs.

¶15. This case turns on the propriety of the dismissal of the State's complaint pursuant to Rules 12(b)(6) and 9(b) of the Mississippi Rule of Civil Procedure; therefore this Court need only address whether the State failed to plead fraud with the specificity required by Rule 9(b), and whether dismissal pursuant to Rule 12(b)(6) was proper.

## STANDARD OF REVIEW

¶16. "In reviewing the grant of a motion to dismiss for failure to state a claim, the appellate court conducts a de novo review." ***Webb v. DeSoto County***, 843 So. 2d 682, 684 (Miss. 2003) (citing ***Lowe v. Lowndes County Bldg. Inspection Dep't***, 760 So. 2d 711, 712 (Miss. 2000)).

## ANALYSIS

*(I) Whether the State failed to plead fraud with the specificity required by Rule 9(b) of the Mississippi Rules of Civil Procedure.*

¶17. Rule 9(b) of the Mississippi Rules of Civil Procedure sets forth the pleading requirements when fraud is alleged. It reads, in relevant part, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

M.R.C.P. 9(b). If a plaintiff's complaint does not comply with the particularity requirements of Rule 9(b), "the complaint should not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *State Indus., Inc. v. Hodges*, 919 So. 2d 943, 948 (Miss. 2006).

¶18. In *Allen v. Mac Tools, Inc.*, 671 So. 2d 636 (Miss. 1996), this Court expounded on Rule 9(b), noting that "[f]raud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated." *Id.* at 642 (quoting *Brabham v. Brabham*, 483 So. 2d 341, 342 (Miss. 1986)). The Court in *Mac Tools* relied upon the elements of fraud to determine whether the plaintiff's complaint adequately pled fraud. *Id.* These elements are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Id.* (citing *Benson v. Hall*, 339 So. 2d 570 (Miss. 1976); *Edmonds v. Delta Democrat Publ'g Co.*, 93 So. 2d 171 (Miss. 1957)).

¶19. Applying this definition of fraud to the case at bar, the State's amended complaint alleges that Bayer "caused false Average Wholesale Prices for each of the listed pharmaceuticals to enter the stream of commerce knowing that they would be used by Mississippi as the principal means of estimating the acquisition cost of pharmaceuticals dispensed to beneficiaries of the Medicaid program, causing Mississippi to overpay [Bayer's] customers." This allegation alone asserts a knowing, material, and false representation by

9

Bayer with the purpose of deceiving the State, and that the State's reliance on Bayer's representation proximately caused the State's injury. Yet, the State went further to say in the amended complaint that:

> Each defendant reported directly, or caused to be reported AWPs for their products on a periodic and continuing basis for publication and dissemination to Mississippi. Each defendant [which includes the Bayer defendants] knew that the AWP information which they provided and caused to be reported was false. Each defendant misrepresented the pricing information with the intent of inducing Mississippi to rely on the false information in reimbursing its customers, the Medicaid providers. Mississippi's Medicaid program reasonably relied on the false Average Wholesale Prices to reimburse the providers. Each defendant's misrepresentation are [sic] continuing, as they regularly and periodically continue to issue, cause to be issued, and maintain, false and inflated Average Wholesale Prices for publication by the industry reporting services. As a result of each defendant's fraudulent conduct, the State has been damaged by overpaying for each defendant's pharmaceutical products listed in the attached Exhibit A.

¶20. The State's amended complaint meets the specificity requirements of Rule 9(b), and Bayer does not dispute that without the settlement agreement, the amended complaint would have been pled sufficiently against the named Bayer defendants, as it was for each and all of the other defendants. The question, then, is whether the trial court erred in considering the 2001 Settlement Agreement between the State and Bayer when ruling on Bayer's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.

*(II) Whether dismissal pursuant to Rule 12(b)(6) was proper.*

¶21. "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." ***Howard v. Estate of Harper ex rel. Harper***, 947 So. 2d 854, 856 (Miss. 2006) (citing ***Liggans v.***

10

*Coahoma Sheriff's Dep't*, 823 So. 2d 1152, 1154 (Miss. 2002)). "This Court must find that there is no set of facts that would entitle a defendant to relief under the law in order to affirm an order granting the dismissal of a claim on a Rule 12(b)(6) motion." *Wilbourn v. Equitable Life Assurance Soc.*, 998 So. 2d 430, 435 (Miss. 2008) (citing *Lowe v. Lowndes County Bldg. Inspection Dep't*, 760 So. 2d 711, 713 (Miss. 2000)). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, and an inquiry as to the legal sufficiency is "essentially limited to the content of the complaint." *T.M. v. Noblitt*, 650 So. 2d 1340, 1345-46 (Miss. 1995) (quoting *Jackson v. Procunier*, 789 So. 2d 307, 309 (5th Cir. 1986)). This Court has gone further, holding that Rule 12(b)(6) motions "are decided on the face of the pleadings alone." *Hartford Cas. Ins., Co. v. Halliburton Co.*, 826 So. 2d 1206, 1211 (Miss. 2001). Moreover, Mississippi Rule of Civil Procedure 12(b) provides in part:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56[.]

M.R.C.P. 12(b)(7).

¶22. Notwithstanding this Court's longstanding application of Rule 12(b), Bayer relies on *Sennett v. United States Fidelity and Guaranty Company*, 757 So. 2d 206 (Miss. 2000), asserting that a trial court may consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion. In *Sennett*, the core issue was whether the trial court had erred in granting a dismissal pursuant to the defendant's Rule 12(b)(6) motion after considering an insurance policy that was attached to the defendant's motion. *Id*. at 209. This Court joined the ranks

11

of several federal courts of appeal in holding that, in rare circumstances, a trial court may consider documents attached to a defendant's Rule 12(b)(6) motion to dismiss without converting the motion to dismiss to a Rule 56 motion for summary judgment, as long as the "plaintiff has actual notice of all of the information in the movant's papers and has relied upon these documents in framing the complaint." *Id.* (quoting *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). The Court noted that a primary purpose for limiting the review of a Rule 12(b)(6) motion to the face of the complaint is that considering matters outside the pleadings might deprive the plaintiffs of adequate notice of an affirmative defense, and that if a plaintiff relies upon the extrinsic documents in framing his or her complaint, the concern for adequate notice is "largely dissipated." *Id*.

¶23. Ultimately, the Court held that, because the third-party complaint was "central and necessary to the Plaintiff's cause of action," and because the terms of the policy were "clear, plain, and unambiguous," the trial court did not err in considering it when ruling on the Rule 12(b)(6) motion without converting the motion to a motion for summary judgment. *Id.* at 211.

¶24. However, rather than adhering to the reasoning in *Sennett*, this Court has affirmed its allegiance to the rule limiting review of a Rule 12(b)(6) motion to the face of the complaint. In *Wilbourn*, 998 So. 2d 430 (Miss. 2008), the trial judge granted the defendant's Rule 12(b)(6) motion after considering the effect of a whole-life insurance policy on the plaintiff's complaint. Upon review, this Court held that Rule 12(b) expressly notes that when "matters outside the pleading are presented . . . the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.* (quoting M.R.C.P. 12(b)). The Court

12

ultimately vacated the order of dismissal, noting that the trial judge had erred in considering matters outside the pleadings without converting the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and failing to give the nonmovant, at minimum, ten days' notice of a hearing for summary judgment. *Id*. at 436. Similarly, in ***Sullivan v. Tullos***, 19 So. 3d 1271 (Miss. 2009), this Court held that failure to give a party ten days' notice after a Rule 12(b)(6) motion has been converted into a Rule 56 motion will result in a reversal of the judgment by this Court. ***Id.*** at 1276.

¶25. Here, as in ***Wilbourn*** and ***Tullos***, the trial court considered matters outside the pleadings when it took into account the 2001 Settlement Agreement. Having done so, the trial court was required to convert Bayer's Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. The record shows that the trial court failed to do so, depriving the State of actual notice of its intent to rule on the matter as a motion for summary judgment. This Court's recent interpretation of Rule 12(b)(6) and Rule 9(b) in ***Wilbourn*** and ***Tullos*** and a plain reading of Rule 12(b) establish this as error.

## CONCLUSION

¶26. The trial court's dismissal of the State's claims regarding presettlement non-*qui tam* drugs is reversed, and this case is remanded to the Chancery Court of the First Judicial District of Hinds County for proceedings consistent with this opinion.

¶27. **REVERSED AND REMANDED.**

**CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR. WALLER, C.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J.**

**WALLER, CHIEF JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶28. I agree with the majority that the State's amended complaint satisfies the specificity requirements of Rule 9(b). I also agree that the trial court erred by not converting Bayer's Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, but for different reasons. Conversion to summary judgment is not required every time a trial court considers documents attached to a Rule 12(b)(6) motion. *Sennett v. U.S. Fid. & Guar. Co.* ["USF&G"], 757 So. 2d 206 (Miss. 2000). In my view, *Sennett* is good law if the facts warrant. They do not here, however, because the trial court considered matters outside of both the pleadings and the attached documents—namely, the presettlement investigation. I would reverse and remand on those grounds; and therefore, I concur in part and in result.

¶29. In *Sennett*, this Court recognized an exception to the general rule that a Rule 12(b)(6) motion must be converted into a Rule 56 motion if the trial court considers matters outside the pleadings. *Sennett*, 757 So. 2d at 209-10. In that case, the Sennetts' complaint alleged that USF&G and Fidelity were obligated under the terms of "an insurance policy" to defend or indemnify the Sennetts against a wrongful-death suit. *Id.* at 208. USF&G and Fidelity filed a motion to dismiss and attached copies of two insurance policies to their motion. *Id.* The trial court considered the pleadings and the terms of the two policies in dismissing USF&G and Fidelity. *Id.* at 209. We held that conversion to summary judgment was unnecessary because: (1) the Sennetts' complaint referred to the policies; (2) the policies were central and necessary to their cause of action; and (3) USF&G and Fidelity attached the entire policies to their motion to dismiss. *Id.* at 210 (quoting *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 596 (E.D. Tex. 1994)).

14

¶30.    Although the majority frames **Sennett** as an aberration within our longstanding jurisprudence, it is sound law where the facts warrant.  The necessity of converting a Rule 12(b)(6) motion to a Rule 56 motion dissipates where a plaintiff has adequate, actual notice of all the information in the movant's papers and relies on that information in framing the complaint.  **Sennett**, 757 So. 2d at 210 (citing **Cortec Indus. v. Sum Holding L.P.**, 949 F.2d 42, 48 (2d Cir. 1991)).  **Sennett**'s exception also is compatible with our rules of civil procedure.  Rule 10(c) of the Mississippi Rules of Civil Procedure states that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Miss. R. Civ. P. 10(c).  The federal counterpart to Mississippi's Rule 10(c) is the basis for a bevy of federal courts[3] allowing consideration of documents attached to a Rule 12(b)(6) motion. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil 3d* § 1327, at 443-44 (2004).

¶31.    Admittedly, as pointed out by the majority, our recent decisions in **Sullivan v. Tullos**, 19 So. 3d 1271 (Miss. 2009), and **Willbourn v. Equitable Life Assurance Society**, 998 So. 2d 430 (Miss. 2008), indicate that conversion to summary judgment is necessary where matters outside the pleading are considered.  Yet, neither of those cases discussed **Sennett** or its implications.  **Sullivan**, 19 So. 3d 1271; **Willbourn**, 998 So. 2d 430.

¶32.    **Sennett**'s exception would apply in this case but for one important distinction.  The State's amended complaint referred to the 2001 Settlement Agreement.  That Settlement Agreement was central and necessary to the State's cause of action because it controlled

---

        [3] **Sennett**, 757 So. 2d at 209 n.1; *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil 3d* § 1327, at 443-47 (2004).

15

which claims were actionable. Furthermore, Bayer attached the 2001 Settlement Agreement to its motion to dismiss. Had the trial court considered only the pleadings and the attached documents, which included the 2001 Settlement Agreement, conversion to summary judgment would not have been required. *See Sennett*, 757 So. 2d at 209-10. But here, unlike *Sennett*, the trial court looked beyond the face of the pleadings and the attached documents by considering facts surrounding the presettlement investigation. *See id.* at 209.

¶33.   As explained below, the comprehensiveness of the presettlement investigation formed the central basis for the trial court's dismissal. In its Report, Recommendation and Order No. 2, the trial court stated it "trusted" that the presettlement investigation encompassed *qui tam* and non-*qui tam* drugs alike. It thus required the State to plead around that investigation in any later complaint. The State had to show that the investigation leading up to the 2001 Settlement Agreement was inadequate.

> [T]he [2001] settlement was preceded by a broad based investigation of Bayer led by the federal government and joined by 47 states. Had concerns arisen about price reporting on products other than the six Qui Tam Drugs, *we trust* that those concerns would have been addressed in the course of the investigation and settlement. In any event, absent any specific allegation of wrongdoing as to Non-Qui Tam Drugs, we find no basis for the State's claims relating to the pre-settlement period to proceed at this point. *If at a later date the State has evidence the comprehensive investigation previously made against Bayer that resulted in the settlement should have included other drugs for the time prior to 2001, the State may bring a new action at that time.*

(Emphasis added.)

¶34.   In response to Report, Recommendation and Order No. 2, the State filed its first amended complaint, in which it attempted to distinguish the earlier, presettlement investigation. It alleged that particular investigation had "focused upon products and

16

practices where spread and spread marketing techniques were more extreme or flagrant . . . ." The State contended that the subject suit is broader: It attacks an "industry practice" of introducing an Average Wholesale Price inflated by a minimum of seventeen percent.

¶35.   The trial court found that the State had failed to state a claim for which relief could be granted. It maintained that "it is logical to assume" that concerns about non-*qui tam* drugs would have been addressed in the course of the presettlement investigation. Consequently, it dismissed the case, concluding that the State had failed to make any specific allegation that the settlement and investigation leading up to it were inadequate.

¶36.   The comprehensiveness of the presettlement investigation is a question of fact that is not apparent from the pleadings or the attached documentation. The trial court simply assumed its own facts about that investigation and required the State to plead around those assumptions. More importantly, the presettlement investigation ultimately is immaterial to whether the State has asserted a legally recognizable claim for relief. Even if the presettlement investigation encompassed every drug manufactured by Bayer, that alone would not bar a subsequent claim. The 2001 Settlement Agreement is the only document that precludes any later claims, and it releases only those claims concerning *qui tam* drugs. The presettlement investigation had no bearing at the 12(b)(6) stage.

¶37.   The trial court's consideration of the presettlement investigation necessitated conversion to summary judgment. I would reverse and remand on those grounds.

**DICKINSON, J., JOINS THIS OPINION.**