# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00928-SCT

*PEARL RIVER VALLEY WATER SUPPLY DISTRICT*

*v.*

*JAD J. KHALAF*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2020 |
| TRIAL JUDGE: | HON. JOHN C. McLAURIN, JR. |
| TRIAL COURT ATTORNEYS: | DENNIS L. HORN |
| | TROY PHILIP HUSKEY |
| | PHILIP CAREY HEARN |
| | JAD JAMAL KHALAF |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: TROY PHILIP HUSKEY |
| ATTORNEYS FOR APPELLEE: | PHILIP CAREY HEARN |
| | JAD JAMAL KHALAF |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/09/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.　After a sinkhole formed on the leasehold of Jad J. Khalaf, the Pearl River Valley Water Supply District (District) filed a complaint against Khalaf in the Chancery Court of Rankin County to recoup the costs of repairing the sinkhole and for other relief. Khalaf filed a motion to dismiss for failure to state a claim, which the chancery court granted. The District

appeals. Because the District's complaint failed to state a claim on which relief can be granted, we affirm the decision of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2. The District is an agency of the state of Mississippi that operates and manages the Ross Barnett Reservoir and surrounding District lands. Miss. Code Ann. §§ 51-9-105, -121 (Rev. 2016). It is authorized to lease or sell lands previously taken by condemnation. Miss. Code Ann. §§ 51-9-121, -122, -122.1 (Rev. 2016); *Culley v. Pearl River Indus. Comm'n*, 234 Miss. 788, 108 So. 2d 390 (1959).

¶3. In 1983, the District entered into a development lease with Lakeshore Pointe, Inc. Under the terms of the lease, Lakeshore Pointe, Inc., leased a parcel of land containing approximately 22.79 acres for the purpose of developing "residential apartment/condominium [units] and/or such other use as may be approved by the Board of the District." In 1996, Lakeshore Point, Inc., assigned approximately 14.32 acres of the original lease to Lakeshore Point, LLC, as approved by the District, that eventually was developed as Windward Bluff Subdivision in Rankin County.

¶4. On July 3, 2018, Khalaf entered into a lease of 2.09 acres of land in Windward Bluff Subdivision abutting the Ross Barnett Reservoir. Due to a collapsed storm drain pipe, a sinkhole formed on Khalaf's leased property. The District demanded that Khalaf repair the drain pipe and sinkhole. But Khalaf refused to make the repairs, asserting that the District and/or the Windward Bluff Homeowners' Association were the responsible parties. After

2

negotiations with Khalaf failed, the District repaired the storm drain pipe and sinkhole, splitting the repair costs with the Windward Bluff Homeowners' Association.

¶5. The District then filed a complaint against Khalaf, alleging that his lease placed the responsibility on him to repair the faulty storm drain pipe and resultant damage. The District asserted a breach of contract claim, seeking to cancel Khalaf's lease based on his refusal to remedy the sinkhole and to recoup its costs of repair in the amount of $35,421.50. It further demanded the costs of remediating damage to the Ross Barnett Reservoir caused by sediment that had escaped from the sinkhole. According to the District's complaint, 144 linear feet of storm drain pipe lay underneath the ground of the Khalaf leasehold and had been installed by "the previous developer."

¶6. The District attached to its complaint the several leases that established the property rights at issue. The 1983 lease from the District to Lakeshore Point, Inc., allowing Lakeshore Point, Inc., to develop 22.79 acres, incorporated a proposal for facilities and services providing for a multifamily residential apartment area along with a site plan, to be approved by the District, showing roads, walkways, residential lots, and "various common elements and amenities." The lease specified in part as follows:

> Lessee, in fulfillment of its herein accepted obligations to the public, shall commence the development of the Leased Premises within six months after the date of the delivery of this Lease to Lessee and shall have facilities and services enumerated on the attached exhibits available to the General Public within the specified period on said exhibit. The District may agree in writing to an extension of time for providing the facilities and services designated in attached exhibits wherever, in its opinion, the public demand does not reach the anticipated level at the time stated, or when a delay in providing the facilities and services is beyond the control of the Lessee. The Lessee agrees that the premises shall at no time be used for any unlawful activity, and only

3

for the general and related purposes specified in said attached exhibits. The Lessee further agrees that it will at its own cost and expense keep all improvements in a good state of repair at all times and that it will at all times maintain improvements not less in size and quality than the initial construction as shown on the attached exhibits. Lessee shall pay for all water and other utilities and services tendered to the demised premises. *Lessor shall have no responsibility for maintenance of any part of the premises and improvement.*

(Emphasis added.) In 1996, Lakeshore Point, Inc., assigned a lease for 14.32 acres of the property to Lakeshore Point, LLC, that was developed as Windward Bluff Subdivision. The same language was included in the lease assignment approved by the District from Lakeshore Point, Inc., to Lakeshore Point, LLC, eventually developed as Windward Bluff Subdivision.

¶7. In 2018, Lakeshore Pointe, LLC, executed an "Original Lease Assignment" of 2.09 acres in Windward Bluff Subdivision to Khalaf. The Khalaf lease assignment referenced the original lease, and provided as follows:

Lessor shall have no liability for maintenance of any private open areas, parks, recreational facilities, streets, walkways, seawalls, retaining walls or any utilities within the subdivision.

. . . .

5.     Lessee agrees, at Lessee's own cost and expense, to keep all improvements in good state of repair at all times, and maintain the leased premises in good order and in a clean, sanitary and safe condition, and at all times maintain all structures and facilities, including retaining walls, *surface water drainage systems*, and sea walls, in a good state of repair, and all in a manner which will not result in any pollution of the Reservoir from property herein leased or otherwise result in any condition deemed by Lessor to be hazardous to water purity or quality.

(Emphasis added.)

12.     Lessee shall be responsible for any damage that may be caused to Lessor's property by the activities of Lessee and shall exercise due diligence in the protection of *all improvements*, timber and other property of Lessor

4

which may be located on the leased premises or in the vicinity thereof, against fire or damage from any and all other causes. In the exercises of the privileges herein granted, Lessee shall under no circumstances interfere with navigation or pollute the waters of the Reservoir.

(Emphasis added.)

¶8. Khalaf filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Mississippi Rule of Civil Procedure 12(b)(6). He attached the Declaration of Covenants for Windward Bluff Subdivision to his motion to dismiss. Khalaf argued that the leases and covenants established that he lacked responsibility for repairing the collapsed storm drain pipe and resultant sinkhole. Khalaf cited the following provision of his lease assignment in his motion to dismiss:

> Lessee Covenants and agrees with Lessor to use the leased premises for residential purposes only, and in accordance with the Declaration of Covenants, Conditions and Restrictions for Windward Bluff Subdivision, and in accordance with all easements, rights of way, and mineral reservations of record affecting the above described property.

¶9. Khalaf referenced also the following provisions of the Declaration of Covenants for Windward Bluff Subdivision:

> Article X, Section 3 Easements for Utilities. There is *hereby reserved to the Association and DISTRICTWSD blanket easements* upon, across, above and under all property subject to this Declaration for access, ingress, egress, installation, *repairing, replacing, and maintaining all utilities, serving the property subject to the Declaration* or any portion thereof, including, but not limited to, gas, water, sanitary sewer, telephone, and electricity, *as well as storm drainage . . . .*

(Emphasis added.)

¶10. At the hearing on Khalaf's motion to dismiss, the District asserted that the storm drain pipe is one of three in operation that removes water from Windward Bluff Subdivision and

5

that it removes water not associated with Khalaf's property. The chancery court granted Khalaf's motion to dismiss. The chancery court recognized the District's assertion at the hearing that the storm drain pipe services portions of the Windward Bluff Subdivision. Further, the chancery court found that the exhibits provided that the storm drain pipe is situated on an easement granted to the Homeowners' Association. And Khalaf purchased the leasehold rights subject to the initial developer's master plan, covenants, and the easements granted to the Homeowners' Association. The chancery court ruled that "Khalaf is not responsible to maintain or repair common property, structures, and storm-drainage pipes that benefit the neighborhood, and instead that responsibility lies with either the District, the initial developer, and/or the Home Owner's Association."

¶11.    The District appeals. For clarity, we have consolidated its arguments into two issues.

## STANDARD OF REVIEW

¶12.    This Court applies *de novo* review to the trial court's ruling on a motion to dismiss for failure to state a claim. *GEICO Cas. Co. v. Stapleton*, 315 So. 3d 464, 466 (Miss. 2021). "The Court must accept the allegations in the complaint as true and consider only whether *any* set of facts could support the plaintiff's action." *Id.* (internal quotation marks omitted) (quoting *City of Vicksburg v. Williams*, 191 So. 3d 1242, 1244 (Miss. 2016)).

## DISCUSSION

I.    **The chancery court did not err by declining to convert Khalaf's motion to dismiss into a motion for summary judgment.**

¶13.    The District argues that the chancery court relied on the Declaration of Covenants, a document that was attached to Khalaf's motion to dismiss and not attached to the District's

6

complaint. Because the chancery court considered a document outside the complaint, the District argues that Rule 12(b) required the court to have converted Khalaf's motion to dismiss into a motion for summary judgment. Khalaf responds that conversion was not required because the chancery court rendered its decision based solely on the leases attached to the District's complaint.

¶14. Khalaf's motion to dismiss asserted that several documents, including the covenants, were attached as exhibits. But, inadvertently, the covenants and other documents were not attached to the motion to dismiss. Upon discovering the omissions, Khalaf moved to amend his motion to dismiss to include the missing covenants and the other missing documents. At a hearing on the motion to amend, the District objected to Khalaf's amendment of the motion with emails and documentation concerning his prior dispute with the District about approval of a plat. Khalaf agreed to omit the documents to which the District had objected. The covenants were not among the documents to which the District had objected. The chancellor granted Khalaf's motion to amend.

¶15. The record bears out that the covenants attached to Khalaf's motion to dismiss were before the chancery court. At the hearing on the merits, both parties discussed the covenants. Khalaf argued rigorously about the impact of the covenants. Not only does the hearing transcript reflect that the covenants were before the chancery court, so does the chancellor's order granting Khalaf's motion to amend his motion to dismiss, which had the effect of placing documents outside the complaint before the court. Although Khalaf contends on appeal that he agreed to proceed on the complaint alone, the District correctly points out that

the record does not bear out that contention. Rather, the record shows that Khalaf attached the covenants to his motion to amend the motion to dismiss and that the motion to amend was granted. When determining what occurred before the chancery court, this Court defers to the record, not to the unsupported allegations of the parties in their appellate briefs. *Boyd Constr. Co. v. Bilbro*, 210 So. 2d 637, 640 (Miss. 1968).

¶16.    Under Rule 12(b) of the Mississippi Rules of Civil Procedure, when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56[.]" This Court has held that Rule 12(b)(6) review is limited to the face of the complaint. *State v. Bayer Corp.*, 32 So. 3d 496, 503 (Miss. 2010). In *Bayer*, this Court found that the trial court had erred by considering a settlement agreement, a document outside the complaint. *Id.* But the plaintiff's claim in *Bayer* was not based upon the settlement agreement. *Id.* at 498. Rule 10(d) of the Mississippi Rules of Civil Procedure provides a mechanism for placing documents central to the plaintiff's claims before the court at the pleading stage. Under Rule 10(d), "[w]hen any claim . . . is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading . . . ." M.R.C.P. 10(d). Because the District based its claim on certain leases, attaching those leases to its complaint was proper under Rule 10(d). Likewise, Khalaf properly attached the covenants to his motion to dismiss because they were referenced in a lease filed with the complaint, and they were central to the District's claim that he was responsible for the storm drain. The

United States Court of Appeals for the Seventh Circuit has held, and we agree, that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). We hold that the trial court did not err by declining to convert the motion to dismiss to a motion for summary judgment.

## II. Whether the chancery court properly dismissed the District's complaint because it failed to state a claim upon which relief can be granted.

¶17. The District argues that the trial court erred by granting Khalaf's motion to dismiss. It avers that the lease from the District to Lakeshore Point, Inc., and the partial assignment of that lease to Lakeshore Pointe, LLC, were development leases. And both leases specified that the District "shall have no responsibility for maintenance of any part of the premises and improvement." The District contends that the Khalaf lease also was a developer's lease. Therefore, it argues, Khalaf stepped into the shoes of the original developer of Windward Bluff Subdivision when he executed the lease, including his assumption of responsibility for the extant storm drainage easement for Windward Bluff Subdivision that was located on his leased property. Close examination of Khalaf's lease is required. First, while the District calls Khalaf's lease a developer's lease, the lease does not mention development and instead mandates that Khalaf is to "use the leased premises for residential purposes only . . . ." Second, Khalaf's lease incorporates some but not all of the terms of the two prior leases.

9

Khalaf's lease says that it "constitutes an assignment in part" of the lease between the District and Lakeshore Pointe, Inc., and assigned to Lakeshore Pointe, LLC, termed the "Ground Lease." It says that

> [r]eference is made to the Ground Lease for the terms, covenants and restrictions contained therein and associated therewith, and to the proposed facilities and services exhibit thereto, which provides in part that [the District] shall have no liability for maintenance of any private open areas, parks, recreational facilities, streets, walkways, sea walls, retaining walls or any utilities within the subdivision.

Third and most important, while the lease makes Khalaf responsible for "all improvements" including "surface water drainage systems," Khalaf "agree[d] with [The District] to use the leased premises . . . in accordance with the Declaration of Covenants, Conditions and Restrictions for Windward Bluff Subdivision, and in accordance with all easements, rights of way, and mineral reservations of record affecting the above described property." The lease makes clear that Khalaf's leasehold is part of a platted subdivision. It says that "[Lakeshore Pointe, LLC,] warrants to [Khalaf] that leasehold title is good, merchantable leasehold title subject only to protective covenants, . . . and easements as shown on the plat of the subdivision in which the leased premises are situated."

¶18. While the District argues that it never adopted the covenants as being applicable to Khalaf's leasehold, it was a party to Khalaf's lease, which stated that Khalaf took the property subject to the covenants. Windward Bluff's developer, Lakeshore Point, LLC, was another party to the lease. "Our law requires this Court to accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." *A&F Props., LLC v. Madison Cnty. Bd. of Supervisors*, 933 So. 2d 296, 301 (Miss. 2006) (internal quotation marks

10

omitted) (quoting *Ferrara v. Walters*, 919 So. 2d 876, 882 (Miss. 2005)). The terms of the lease were binding on Khalaf, Lakeshore Point, LLC, and the District, and in the lease all three parties agreed that Khalaf's property was subject to the Declaration of Covenants for Windward Bluff Subdivision. Those covenants reserved to the Windward Bluff Homeowners' Association and the District "blanket easements" for "repairing, replacing, and maintaining . . . storm drainage" on all property subject to the covenants. The lease was recorded in the land records for Khalaf's property in the office of the Pearl River Valley Water Supply District Lease Department. The recordation of the lease provided public notice that Khalaf's lease was subject to the Declaration of Covenants for Windward Bluff Subdivision. The dissent points out that Khalaf's proposed Phase 5 Supplement and Addition to the Covenants had not been approved by the District and recorded. But Khalaf's recorded lease is the operative document in this case, and that lease bound Khalaf, the District, and Lakeshore Point, LLC, to its terms, one of the terms being that Khalaf's leased property is subject to the covenants.

¶19.    Riparian law holds that "[a]n owner of land which is situated over other lands ('the upper landowner') is liable for water which flows onto land which lies underneath the incline when he has, by artificial means, discharged the water in a manner that unreasonably damages the lower landowner." *Martin v. Flanagan*, 818 So. 2d 1124, 1126 (Miss. 2002) (quoting *Hall v. Wood*, 443 So. 2d 834, 839 (Miss. 1983)). The storm drain pipe in question had been installed by a Windward Bluff developer, either Lakeshore Pointe, Inc., or Lakeshore Pointe, LLC, pursuant to the site plan approved by the District. The storm drain

11

pipe's function, as asserted by the District, is not to drain surface water from Khalaf's property, but to drain the entire Windward Bluff Subdivision through Khalaf's property into the Ross Barnett Reservoir. Therefore, it was not a "surface water drainage system" for Khalaf's property for which he was responsible under his lease. Because Khalaf took the leasehold subject to the covenants reserving storm drainage easements to the Windward Bluff Homeowners' Association and the District, he was not responsible for repairing the storm drain pipe installed by a developer long before he had entered into the lease. For that reason, we affirm the dismissal of the District's complaint. We observe that Khalaf did not have to show that the Windward Bluff Homeowners' Association agreed to be responsible for the faulty storm drain pipe; what he had to show was that *he* was not responsible. And he has made that showing. Therefore, we affirm the dismissal of the District's complaint.

## CONCLUSION

¶20.    We hold that the District's complaint failed to state a claim upon which relief can be granted. Therefore, we affirm the judgment of the Chancery Court of Rankin County that dismissed the complaint.

¶21.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., MAXWELL, CHAMBERLIN AND ISHEE JJ., CONCUR. BEAM, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN AND GRIFFIS, JJ.**

**BEAM, JUSTICE, DISSENTING:**

¶22.    I find that an issue remains as to whether Khalaf had a legal duty to repair the storm-drain pipe on his leasehold.  Therefore, I respectfully dissent from the majority's decision.

12

¶23. In its order granting Khalaf's Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss, the chancery court concluded that the responsibility for the storm-drain pipe lay either with the Pearl River Valley Water Supply District, the initial developer, and/or the Windward Bluff Homeowners' Association (HOA). The chancery court excluded Khalaf from the uncertainty because the court found that since Khalaf is a lessee of the District, he is not responsible for maintaining or repairing common property, structures, and storm-drain pipes that benefit the neighborhood. I cannot reach this conclusion on the pleadings and exhibits presented in Khalaf's Rule 12(b)(6) motion to dismiss.

¶24. As the District contends, Khalaf purchased an unplatted, undeveloped 2.09 acre parcel originally leased by the District to Lakeshore Pointe, Inc., and subsequently assigned to Lakeshore Pointe, Inc. While the lease agreement between Khalaf and the District requires the leasehold to be used in accordance with the Declaration of Covenants for Windward Bluff Subdivision, this does not mean that Khalaf's leasehold was automatically incorporated into the declaration of covenants by operation of the lease agreement. The declaration of covenants provides what property is subject to the declaration of covenants, and how additional property is incorporated:

> SECTION I. Property Subject To This Declaration. The real property which is and shall be held, transferred, leased, conveyed and occupied subject to this Declaration is located in Rankin County, State of Mississippi, and is more particularly described as Windward Bluff, Phase 1, Revised, a subdivision according to the plat there of which is on file in the office of the Chancery Clerk of Rankin County, Mississippi, in Plat Cabinet C, Slot 53, reference to which is hereby made in aid of and as part of this description.

> SECTION 2. Additions to Property. The Declarant and/or the Association with the prior written consent of the District, may add additional property or

13

properties to the scheme of the Declaration by filing of record an amended or supplemental Declaration of Covenants, Conditions and Restrictions of the this Declaration to such property or properties; provided, however, that such other Declaration may contain such complimentary additions and modifications of the covenants, conditions, and restrictions contained herein as may be necessary to reflect the different character, if any, of the added properties but which are not generally inconsistent with the concept of this Declaration.

¶25.   According to the exhibits, the original declaration of covenants described as Windward Bluff, Phase 1, were recorded in 1997. Phase 2 was added and recorded in 2002; Phase 3 was added and recorded in 2004; and Phase 4 was added and recorded in 2016.

¶26.   No showing has been made that Khalaf's proposed Phase 5 supplement and addition to the declaration of covenants had been approved and recorded. And I agree with the District that no showing has been made that the HOA agreed to be responsible for this particular storm drain and accepted an easement for this undeveloped, unplatted portion of Windward Bluff Subdivision.

¶27.   Ostensibly, if the HOA is not responsible for the maintenance of this particular storm drain, the responsibility would lie with the lessee based on the leasehold agreement that expressly relieves the District from any "responsibility for maintenance of any part of the premises and improvement." Also, the District's contention that Khalaf stepped into the shoes of the developer merits further consideration as well.[1]

¶28.   Khalaf, on the other hand, disputes this. He claims that the District asked him to establish a Phase 5 and to provide a "Phase 5 Supplement and Addition to the Declaration of Covenants, Conditions, and Restrictions for Windward Bluff." Khalaf claims he typed up

_____

[1] According to his own exhibits, Khalaf had plans to develop Phase 5 with multiple units.

14

the requested supplement for Phase 5 and submitted it to the District for approval. Khalaf claims that the District Board voted to preliminary approve his Phase 5 supplement, which Khalaf contends is almost identical to "Phase 4 Supplement and Addition to the Declaration of Covenants, Conditions, and Restrictions for Windward Bluff."

¶29. According to Khalaf, the Phase 5 supplement only adds to the HOA's responsibility in the original Declaration of Covenants. That may be so—irrespective of whether Khalaf stepped into the shoes of the developer or not.[2] But in my opinion, that determination cannot be made on the exhibits that were submitted to the chancery court. Accordingly, I would reverse the chancery court's Rule 12(b)(6) dismissal and would remand the case for further proceedings.

      **COLEMAN AND GRIFFIS, JJ., JOIN THIS OPINION.**

---

[2] *See, e.g.*, ***Heckenberger v. Livingston Dev. Corp.***, 282 So. 3d 1252 (Miss. Ct. App. 2019). There, the Court of Appeals affirmed the chancery court's decision (following a bench trial) concerning a developer's interests in certain leasehold lots on Sixteenth Section land. ***Id.*** at 1259-60. The governing leases and covenants, along with other evidence, had been presented to the chancery court in the case. ***Id.*** Based on the evidence presented, the chancery court had concluded that the developer was subject to the same terms and conditions set forth by the covenants as the other leaseholder's/owner's. ***Id.*** at 1260