832 So.2d 572 (2002)
Curtis W. COLLUMS, Deceased, By and Through Julia F. COLLUMS, Executrix of the Estate of Curtis W. Collums and on Behalf of the Wrongful Death Beneficiaries of Curtis W. Collums, Deceased and Julia F. Collums, Individually, and Flex One, Inc., Appellants,
v.
UNION PLANTERS BANK, N.A., Union Planters Bank of Northeast Mississippi, N.A., Union Planters Bank of Mississippi, and Jim McNeely, Individually, and in His Official Capacity as an Officer of the Other Defendants and John Does 1 through X, Appellees.
No. 2001-CA-00470-COA.
Court of Appeals of Mississippi.
May 28, 2002.
Rehearing Denied August 20, 2002.
Certiorari Denied December 5, 2002.
*574 Dana J. Swan, Clarksdale, attorney for appellants.
Lester F. Sumners, New Albany, attorney for appellees.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the court.

Procedural History
¶ 1. A suit for wrongful death was filed in the Circuit Court of the First Judicial District of Chickasaw County against Union Planters Bank, N.A., Union Planters Bank of Northeast Mississippi, N.A., Union *575 Planters Bank of Mississippi, and its agent employee, Jim McNeely, along with John Does 1 through X. The banks and McNeely are accused of causing or contributing to the suicide of Curtis Collums. The defendants removed the case to federal court on grounds of fraudulent joinder. The federal court disagreed and, per Julia Collums's motion on behalf of the estate, remanded the case back to state court. The defendants sought and received summary judgment from the circuit court on March 2, 2001. Aggrieved, Collums's estate comes before this Court seeking a reversal of the summary judgment order.

Statement of the Facts
¶ 2. Curtis Collums and his wife, Julia F. Collums, owned and operated Flex One, Inc., a health club in Oxford, Mississippi. In March of 1992, Flex One obtained financing from Sunburst Bank, later acquired by Union Planters Bank of Northeast Mississippi, N.A., which then merged into Union Planters Bank, N.A. (bank). Felicia Collums, the daughter of the owners, worked in the company office and handled the business affairs of the corporation.
¶ 3. Flex One utilized an automatic funds transfer (AFT) account at the bank. This allowed the gym to electronically debit a member's dues for deposit into Flex One's account and therefore provide the cash flow for the operation of the business. In April of 1996, Flex One began to experience financial difficulties and became delinquent on its loan payments. The bank had to debit Flex One's AFT account to make note payments and sent a letter warning of foreclosure to Curtis Collums. To further illustrate their financial difficulties, Flex One did not remit to the Internal Revenue Service the payroll withholdings it had deducted from employees, and on July 21, 1997, a federal tax lien for $36,470.97 was filed against them.
¶ 4. Curtis Collums was attempting to sell the business and submitted a copy of a written ninety-day option contract for the sale of real estate to the bank for leniency consideration of the note payments. The bank altered the payment agreement and allowed Collums to make interest only payments for the length of the option contract. The contract expired on February 24, 1998, and there was no new contract for sale. As such, the bank started foreclosure proceedings and closed the business AFT account on February 24, setting off the balance against the delinquent loans.
¶ 5. McNeely informed Collums of these proceedings on the same day. Collums asked if the account could be kept open to make payroll on the following Friday. This fact is not in dispute. However, McNeely states he refused to agree to this term but Collums's wife and daughter say that McNeely agreed to extend the account. On February 24, 1998, McNeely told Collums, "[t]he only solution was to bring the loan current, or to have an unconditional commitment letter to sell the business by the end of week 2-28-98." Collums responded to McNeely that he could provide documentation that the loan would be paid in full by an insurance settlement by March 10, 1998. Collums later had copies of two of his life insurance policies faxed to McNeely. When McNeely questioned Collums for specifics of the settlement, Collums responded, "You don't want to know the details." A memo to the file of February 24, 1998, written by McNeely, and a letter written on February 25, 1998, sent to Collums's home indicated the same. Collums's life insurance policies had a combined face value of $700,000 and a total cash value of $27,351.85. According to McNeely's deposition, the cash value of the policies would not have paid off the loan; however, it would have brought the loan current. McNeely did not specifically *576 state the amount Flex One was in arrears in February of 1998.
¶ 6. On March 6, 1998, Collums got up at his usual time and got ready for his day. He left his home at 3:00 a.m., drove three miles to a church parking lot and shot himself. His body was found later that morning.
Legal Analysis And Standard of Review
¶ 7. In cases of summary judgment, this Court conducts a de novo review of the trial court's grant of summary judgment. Parham v. Moore, 552 So.2d 121, 122 (Miss.1989). A grant of summary judgment is allowed only where the moving party has demonstrated there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Simmons v. Thompson Mach. of Miss., Inc., 631 So.2d 798, 801 (Miss.1994). A fact which resolves any of the issues raised by the parties is a material fact. Strantz v. Pinion, 652 So.2d 738, 741 (Miss.1995). A trial court should deny summary judgment if a full presentation of evidence would raise a triable issue. Id. at 741.
¶ 8. Collums's wrongful death heirs charged the bank and McNeely with intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, unfair business practices, interference with prospective advantage, interference with business relations, wrongful setoff, breach of contract and abuse of process, all of which proximately resulted in the wrongful death of Curtis Collums. Furthermore, Collums's estate asserts that the bank and McNeely allegedly breached their fiduciary duties and their duties of good faith and fair dealing owed to the heirs.
¶ 9. All of the previously mentioned claims stem from the closing of the account and the taking of the funds. However, Felicia Collums, the deceased's daughter and an employee of Flex One, stated that the heirs had no physical evidence of intentional infliction of emotional stress. Without a deliberate and intentional act for the purpose of causing harm, that claim fails. The official court file does not contain the complete depositions of all parties. It contains limited passages which indicate a brief foundation for the remaining claims.
¶ 10. The heirs also claim that, as a result of closing such account, the bank kept the money which was not their property, and that resulted in a conversion of the funds. However, we find that the money in the account actually belonged to the bank. Therefore, the bank is not liable for any wrongdoing. "It is well settled that funds deposited to a general account belong to the bank, with the bank becoming a debtor to the owner of the account for the amount on deposit." Deposit Guar. Nat'l Bank v. Simrall, 524 So.2d 295, 298-300 (Miss.1987). As stated by the United States Supreme Court, "[t]he deposit by a customer with his banker is one of loan, with the superadded obligation that the money is to be paid when demanded by a check." Id. (quoting Davis v. Elmira Sav. Bank, 161 U.S. 275, 288, 16 S.Ct. 502, 40 L.Ed. 700 (1896)). As such, there was no conversion.
¶ 11. The "set-off" principle gives financial institutions the ability to apply a debtor's deposit to payment of his debt then due. Simrall, 524 So.2d at 299-300. The Mississippi Supreme Court stated in Moreland v. People's Bank:
It is well settled that the bank itself has a right, if it so desires, to apply whatever amount the maker of the note has on deposit with it to a payment on the note. Or, in other words, the bank itself has the right to set off the amount it owes the depositor against the amount owed it *577 by the depositor. The relation existing between a bank and a depositor is simply one of debtor and creditor.
Moreland v. People's Bank, 114 Miss. 203, 211-12, 74 So. 828, 829-30 (1917). As such, the bank was not at fault by closing the account and applying the balance to the overdue note.
¶ 12. The testimony about McNeely's "promise" to keep the account open until Friday is inadmissible as hearsay testimony. It was offered to prove the truth of the matter asserted. The testimony was that McNeely agreed to keep the account open as told via telephone to Curtis Collums. Curtis then told Felicia and Julia Collums, resulting in double hearsay. One could attempt to argue that this testimony was within the dying declaration exception to the hearsay rule found in Rule 804(b)(2) of the Mississippi Rules of Evidence. The general requirements concerning the admissibility of dying declarations can be found in Watts v. State, 492 So.2d 1281, 1287 (Miss.1986), where our supreme court set forth specific requirements for dying declarations which includes: (a) the wounded person is in extremis and dies after making the statement, (b) the person realizes that he is mortally wounded, and (c) he has no hope of recovery. None of these requirements are met in the case at bar. Curtis told his family of this agreement with McNeely on February 25, 1998. He died on March 6, 1998. This scenario does not meet the requirements set forth in Watts. This statement does not qualify for any other exception for hearsay testimony.
¶ 13. For argument's sake, we must determine if the "promise" made to Collums is to be considered a contract. An agreement to extend payment, in order to be binding, must be supported by sufficient consideration. Hattiesburg Prod. Credit Ass'n v. Smith, 191 Miss. 119, 120, 1 So.2d 768, 769 (1941). The so-called "promise," if it is to even be considered as offer and acceptance, between McNeely, the bank, and Curtis Collums, was not supported by any consideration. Collums offered nothing beneficial to the bank in exchange for holding the account open. Additionally, we have no credible evidence that the promise ever actually existed. Hearsay testimony is not credible evidence. Moreover, a search of the record shows evidence to the contrary. McNeely wrote Curtis Collums a letter dated February 25, 1998, specifically stating that the account was closed. McNeely further notes that the bank received the fax of the insurance information but the letter states that McNeely did not understand how that would bring the account current. Also, McNeely's handwritten memo to the file dated February 24, 1998, states that the request was made but that the bank could not hold open the account. The memo states that McNeely explained to Collums the only solution was to bring the loan payments current. It is this Court's opinion that no contract ever existed, Curtis Collums was well aware that there was no promise to keep the account open and therefore, no further discussion about this topic is warranted.
¶ 14. The heirs of Curtis Collums rely heavily on State ex. rel Richardson v. Edgeworth, 214 So.2d 579, 582-88 (Miss.1968). This Mississippi case held that suicide is actionable if the suicide is proximately caused by intentional wrongdoing by the defendant and is the result of an irresistible impulse. Id. at 585-88. Irresistible impulse was discussed in the federal case of Shamburger v. Grand Casino of Mississippi, Inc./Biloxi, 84 F.Supp.2d 794, 798 (S.D.Miss.1998). The district court stated that
under Mississippi law it is essential, inter alia, that the decedent must have *578 been in a state of "mental disturbance" in order to be deemed as acting under an irresistible impulse. In addition, he must not be in control of his faculties, or be able to discern the nature nor understand the consequences of his own actions in taking his life. Moreover, the act must be "without conscious violation," a requirement which further emphasized the extreme severity of the mental state which must exist in the decedent in order to establish the presence of an irresistible impulse. Finally, the impulse must in fact be proximately caused by the wrongful conduct of the defendant.
Id. at 798.
¶ 15. The Collums heirs presented an affidavit from Dr. L.D. Hutt, a clinical psychologist from Memphis, Tennessee. Through interviews with Julia and Felicia Collums, Dr. Hutt evaluated Curtis Collums's behavior for a two month period prior to his suicide. Based on those interviews, Dr. Hutt's affidavit stated that "Curtis Collums became severely depressed during this time period and such depression qualifies as a mental illness as generally recognized within the area of clinical psychology. It is my opinion that, because of his mental illness, he suffered an irresistible impulse to commit suicide, and did indeed commit suicide."
¶ 16. This Court, following the Shamburger case, views irresistible impulse as a failure to control the body and not be able to understand the consequences of certain actions. We do not interpret Curtis Collums's behavior as an irresistible impulse. He planned his suicide and knew the benefits that his family would receive upon his death from his life insurance policies. Furthermore, he forewarned McNeely at the bank and told him the loan would be paid by March 10 by an insurance settlement and he had the values of the two life insurance policies sent to McNeely prior to the suicide to verify the amount. Suicide was not an impulse that Collums did not fully consider. He knew the consequences of his actions and planned the act for a number of days.
¶ 17. There was no intentional act by the bank or McNeely giving rise to application of the Edgeworth case. Edgeworth was an action against justices of peace, deputy sheriffs and surety companies for wrongful death by suicide, allegedly caused by intentional abuse of legal process. Edgeworth, 214 So.2d at 581-85. The public figures were collecting funds from bad check writers for private individuals and abusing the criminal process in the collection procedures. Id. Examining the case at bar, there were no allegedly intentional acts that the bank or McNeely could be held responsible for. Felicia Collums stated in her deposition that she had no evidence of McNeely or anyone else intentionally causing harm to her father and that she knew of no ill will against her father.
¶ 18. We now briefly address the issue of a fiduciary relationship between Collums and Union Planters Bank. "Whenever there is a relationship between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter's dependency upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character." Hopewell Enter., Inc. v. Trustmark Nat'l Bank, 680 So.2d 812, 816 (Miss.1996). We do not view Collums's relationship with Union Planter's as this type of relationship. It was simply an arms length business transaction relationship involving a normal debtor-creditor relationship. Union Planters had nothing to gain from the success or failure of Flex *579 One, Inc., as the loan agreement fixed the contractual terms. This relationship was not fiduciary in nature and, as such, it could not be breached. The claim is not actionable.
¶ 19. The actions of McNeely as an agent of the bank were within the law. The bank had attempted to provide assistance to Curtis Collums with the ninety days of interest only payments. After that period ended, the bank had the legal right to set-off. They bank did nothing improper in the eyes of the law. As tragic as this situation is, the heirs of Curtis Collums do not have an actionable claim against McNeely and Union Planters Bank. The grant of summary judgment was proper by the Circuit Court of Chickasaw County and is affirmed.
¶ 20. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT IS AFFIRMED. COSTS ARE ASSESSED AGAINST THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. THOMAS, J., NOT PARTICIPATING.