# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CA-00644-SCT

*BROOKE SHANTELLE DENISON*

*v.*

*MISSISSIPPI ORGAN RECOVERY AGENCY, INC., SHIRLEY SCHLESSINGER, M.D., AND DUSTIN SHEA ALLEN, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2024 |
| TRIAL JUDGE: | HON. ROBERT THOMAS BAILEY |
| TRIAL COURT ATTORNEYS: | MICHAEL T. JAQUES |
| | WHITMAN B. JOHNSON, III |
| | SHANETRIC TOWNSEND |
| | STEPHEN P. KRUGER |
| | THURMAN LAVELLE BOYKIN, III |
| | ROMNEY HASTINGS ENTREKIN |
| | PEELER GRAYSON LACEY, JR. |
| | BENJAMIN BLUE MORGAN |
| | R. MARK HODGES |
| | KIMBERLY NELSON HOWLAND |
| | BEAU MICHAEL BETTIGA |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL T. JAQUES |
| ATTORNEYS FOR APPELLEES: | WHITMAN B. JOHNSON, III |
| | STEPHEN P. KRUGER |
| | R. MARK HODGES |
| | SHANETRIC TOWNSEND |
| | THURMAN LAVELLE BOYKIN, III |
| | KIMBERLY NELSON HOWLAND |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/16/2026 |
| MOTION FOR REHEARING FILED: | |

NO. 2024-CA-00645-SCT

*ESTATE OF PAULA DENISON, DECEASED, BY AND THROUGH BROOKE SHANTELLE DENISON, ADMINISTRATRIX*

*v.*

*MISSISSIPPI ORGAN RECOVERY AGENCY INC. AND SHIRLEY SCHLESSINGER, M.D.*

DATE OF JUDGMENT:              05/3/2024
TRIAL JUDGE:                   HON. ROBERT THOMAS BAILEY
COURT FROM WHICH APPEALED:     LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        MICHAEL T. JAQUES
ATTORNEYS FOR APPELLEES:       WHITMAN B. JOHNSON, III
                               STEPHEN P. KRUGER
                               THURMAN LAVELLE BOYKIN, III
                               SHANETRIC TOWNSEND
NATURE OF THE CASE:            CIVIL - PERSONAL INJURY
DISPOSITION:                   REVERSED AND REMANDED - 04/16/2026
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**SULLIVAN, JUSTICE, FOR THE COURT:**

¶1.    Today's case presents a set of facts that are unique and unusual. After being informed by a hospital in Meridian, Mississippi, that Paula Denison was dead, her family agreed to donate their mother's organs. Accordingly, she was transported to a transplant facility in Flowood, Mississippi, to begin the organ-donation process. But as time passed, it became clear that Denison indeed was not dead. Upon this discovery, she was transported back to the hospital in Meridian. The following day, Denison was again declared dead.

¶2.     Denison's daughter Brooke Denison and Denison's Estate[1] filed separate complaints against multiple parties, including Mississippi Organ Recovery Agency, Inc. (MORA), Dr. Shirley Schlessinger, and Dr. Dustin Shea Allen.[2]

¶3.     In the Estate's case, MORA and Dr. Schlessinger moved for dismissal, claiming that the Estate's complaint failed to state a claim because they were entitled to immunity under the Revised Mississippi Uniform Anatomical Gift Act (UAGA). In Brooke's case, each party moved for dismissal, claiming that the complaint failed to state a claim either due to immunity or bystander recovery. In each of their responses to the motions to dismiss, the Estate and Brooke attached medical records as exhibits.

¶4.     Ultimately, the trial court (1) granted MORA's and Dr. Schlessinger's motions to dismiss on the basis that the Estate's complaint failed to state a claim upon which relief could be granted due to the UAGA's immunity provision and (2) granted the motions to dismiss in Brooke's individual case because the complaint did not allege sufficient facts necessary to establish bystander liability. The Estate and Brooke appealed, and this Court consolidated the two appeals.

¶5.     We find that the trial court committed reversible error by not converting MORA's motion to dismiss into a motion for summary judgment. But we find that the trial court

---

[1]The Estate's claim was brought by Brooke Denison as the administratrix of her mother's estate.

[2]Paula Denison's other children filed two other suits in the Rankin County Circuit Court. But according to Mississippi Electronic Courts (MEC), the cases have been transferred to the Lauderdale County Circuit Court and are stayed pending the outcome of this appeal.

properly dismissed Brooke's individual suit for failure to state a claim under a theory of bystander liability.

## FACTS

¶6.     In the late afternoon of March 17, 2022, Paula Denison arrived at the emergency room of Anderson Regional Medical Center (Anderson) in Meridian, Mississippi. Upon arrival, she was examined and "found to be drowsy and lethargic, arousable to touch, with eye opening and motor function responsive to pain, confused with delayed, but clear, appropriate, and coherent speech, with a GCS of 10." A CT scan of Denison's head was ordered, and one of the emergency-room physicians at Anderson, Dr. McDonald, intubated her.

¶7.     After reviewing the CT report, Dr. McDonald determined that Denison was brain dead around 4:45 p.m. He relayed this determination to the members of Denison's family who were present. Anderson personnel then contacted MORA to request that a representative come to the hospital to discuss with the family the possibility of donating Denison's organs. A MORA representative arrived around 6:00 p.m. and met with Denison's family. Dr. Allen, "a hospitalist chosen by Anderson to provide care to Denison," pronounced Denison legally dead at 6:51 p.m. on March 17, 2022. The family agreed to donate their mother's body for purposes of organ donation. As a result, Denison was transferred to MORA's facility in Flowood, Mississippi.

¶8.     On March 18, at approximately 2:00 a.m., MORA's nurses began monitoring and noting her vital signs. Also during this time, MORA began the process of conducting tests and medical procedures, such as a liver biopsy, to determine if Denison's organs were

4

acceptable for organ donation. Around 7:00 p.m. later that same day, Denison began showing medical signs inconsistent with human death, such as "spontaneous respirations, a reactive pupil, and the presence of coughing and gag reflexes." Subsequently, MORA contacted Anderson and provided an update on Denison's condition. At this time, MORA did not contact the family.

¶9.     Despite Denison's improvement, she remained at MORA's facility and continued to receive "increasing doses of medications" and tests throughout the night of March 18 and into the morning hours of March 19. At 10:16 a.m. on March 19, MORA sent Denison back to Anderson after determining that she no longer met the criteria for organ donation. Again the family was not notified of Denison's status or movement back to Anderson.

¶10.     Denison was readmitted to Anderson's intensive care unit (ICU) approximately two hours later. Upon readmission, Anderson doctors attempted to transfer Denison to other hospitals for neurological care. No other hospital would admit her. At Anderson, her condition deteriorated throughout the night. Three days after initially being declared dead, Denison "exhibited asystole on the monitors, and she was again pronounced deceased by Dr. Allen on March 20, 2022[,] at 6:05[a.m.]."[3]

¶11.     On March 16, 2023, Denison's Estate filed a lawsuit in Lauderdale County Circuit Court against multiple parties: (1) MORA; (2) Dr. Schlessinger, MORA's medical director; (3) Anderson; (4) Dr. McDonald, the first doctor at Anderson to declare Denison deceased;

_____

[3]It is unclear when the family was contacted and informed of their mother's condition and readmittance to Anderson hospital. But the complaint states that the family was consulted numerous times regarding what measures should be taken regarding their mother's care after being readmitted.

(5) Dr. Allen, the second doctor at Anderson to declare Denison deceased; and (6) John Does 1-10. On the same day, Denison's daughter Brooke filed a lawsuit against the identical parties as well. Both complaints alleged, *inter alia*, negligence in failing to adhere to the minimum standards of care; negligent and/or intentional misrepresentation; negligent and/or intentional infliction of emotional distress; breach of contract; *res ipsa loquitur*; lack of informed consent and lack of consent; battery, outrage, and intentional torts; and vicarious liability. The Estate's complaint sought to recover for the wrongful conduct toward Denison. Whereas Brooke's individual complaint sought "damages for her own emotional distress arising out of the same wrongful conduct."

¶12.    MORA and Dr. Schlessinger filed a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6) in the Estate's case. The two parties asserted that dismissal was warranted because the facts alleged in the  complaint "failed to state a claim upon which relief can be granted, because [they are] entitled to immunity[.]" As for the suit regarding Brooke's individual claims, the following parties filed a Rule 12(b)(6) motion to dismiss for failure to state a claim:  (1) MORA, (2) Dr. Schlessinger, (3) Anderson, (4) Dr. McDonald, and (5) Dr. Allen. In each motion to dismiss, the parties asserted that Brooke could not meet the standard for bystander recovery because the complaint did not allege that she had witnessed or had been in the vicinity of any of the alleged negligence.

¶13.    In their respective cases, the Estate and Brooke attached Denison's medical records to their responses to the motions. They claimed that the

> inclusion of the medical records as exhibits [were] intended to place the facts
> plead in the [c]omplaint in medical context, and for the [c]ourt's use and

6

reference if necessary as the case progresses. The exhibits are not legally necessary to contest or defeat Defendants' Motion to Dismiss, consideration of which should be limited to the pleadings.

¶14. After holding a single hearing to address all motions, the trial court made its ruling. In the Estate's case, the trial court granted MORA's and Dr. Schlessinger's motions to dismiss. The trial court determined that MORA and Dr. Schlessinger were immune from suit because Denison's son "gave consent to donate Ms. Denison's body when he signed the authorization/disclosure form" and that MORA and Dr. Schlessinger "acted in good faith and in reliance upon an authorization under the provisions of [Mississippi Code Sections 41-39-101 through -149 (Rev. 2023)] without notice of any revocation."

¶15. The trial court also granted the motions to dismiss filed in Brooke's individual suit. The trial court determined that Brooke

> failed to allege any facts to support that she was located near the scene of any incident which could have caused an injury to Ms. Denison. [Brooke] also fails to allege that she contemporaneously observed any act and/or omission by [MORA] that resulted in an injury to Ms. Denison.

The trial court concluded that "[Brooke's] [c]omplaint does not contain allegations regarding two of the necessary elements required to obtain relief for bystander liability." The Estate and Brooke appealed.[4]

---

[4]Neither Anderson, Dr. McDonald, or Dr. Allen are parties to the Estate's appeal since they failed to file Rule 12(b)(6) dismissals. But all three did move for a dismissal in Brooke's individual suit, meaning they are parties to Brooke's appeal of her individual claims. That being said, a joint motion to dismiss was filed, seeking to dismiss Anderson and Dr. McDonald from this appeal with prejudice. This Court granted the motion and dismissed those two parties. Order, *Denison v. Miss. Organ Recovery Agency, Inc.*, No. 2024-CA-00644 (Miss. Jan. 24, 2025). Dr. Allen remains a party to the appeal regarding Brooke's individual claims.

¶16. On appeal, the Estate and Brooke assert that the trial court: (1) improperly considered matters outside of the complaints when ruling on the Rule 12(b)(6) motions to dismiss, (2) improperly held that immunity applied to MORA, and (3) erred by dismissing Brooke's separate claims.

## STANDARD OF REVIEW

¶17. This Court has said that "[a] motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is reviewed de novo, as it raises an issue of law." *White v Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 895 (Miss. 2022) (internal quotation marks omitted) (quoting *Jourdan River Ests., LLC v. Favre*, 212 So. 3d 800, 802 (Miss. 2015)). Additionally, we have held that

> "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." *Howard v. Estate of Harper ex rel. Harper*, 947 So. 2d 854, 856 (Miss. 2006) (citing *Liggans v. Coahoma Sheriff's Dep't*, 823 So. 2d 1152, 1154 (Miss. 2002)). "This Court must find that there is no set of facts that would entitle a defendant to relief under the law in order to affirm an order granting the dismissal of a claim on a Rule 12(b)(6) motion." *Wilbourn v. Equitable Life Assurance Soc.*, 998 So. 2d 430, 435 (Miss. 2008) (citing *Lowe v. Lowndes County Bldg. Inspection Dep't*, 760 So. 2d 711, 713 (Miss. 2000)).

*State v. Bayer Corp.*, 32 So. 3d 496, 502 (Miss. 2010). "Our review is limited to the face of the pleading." *Favre*, 212 So. 3d at 802 (citing *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1211 (Miss. 2001)). Simply, a Rule 12(b)(6) motion "tests the legal sufficiency of the complaint." *Id.* (internal quotation mark omitted) (quoting *Cook v. Brown*, 909 So. 2d 1075, 1078 (Miss. 2005)).

8

## DISCUSSION

¶18.    To clarify, the suits before this Court are those brought by the Estate and by Brooke, in her individual capacity, against MORA, Dr. Schlessinger, and Dr. Allen.[5]

**I)    Did the trial court err by granting MORA's motion to dismiss in the Estate's case?**

¶19.    First, the Estate argues that the trial court erroneously granted MORA's motion to dismiss "by considering and relying on documents external to [the Estate's] [c]omplaint[], and further making factual findings in support of its dismissal." The Estate asserts that reversal is required because the trial court "should have considered only the allegations of [its] [c]omplaint[] in evaluating the merits of [MORA's] 12(b)(6) motions."

¶20.    MORA argues that since the Estate was the party that introduced the outside documents, it cannot now complain that doing so was error. Specifically, it asserts that "[t]he invited error doctrine precludes the [Estate] from claiming that the [c]ourt erroneously considered those documents." Additionally, MORA, relying on Court of Appeals case *Breeden v. Buchanan*, 164 So. 3d 1057, 1068 (Miss. Ct. App. 2015), argues that no error occurred because courts can consider documents outside of the pleadings when required for completeness.

¶21.    According to the Estate, the trial court's order clearly shows that matters outside of the complaint were considered. The Estate points to a section of the court's order in which it mentions an authorization form:

---

[5]Hereinafter, MORA, Dr. Schlessinger, and Dr. Allen will be collectively referred to as MORA unless party distinction is necessary.

> [Denison's son] gave consent to donate Ms. Denison's body when he signed the authorization/disclosure form in the presence of a MORA representative and a witness.

Relying on the authorization form, the trial court determined that MORA had acted in good faith. But the complaint did not mention an authorization or disclosure form. Rather, the complaint simply alleged that Denison's family had agreed for MORA to take their mother's body for the purpose of organ donation. As a result, the trial court considered matters outside of the complaint.

¶22. This Court rejects MORA's invited-error-doctrine argument. Despite its reliance on a Court of Appeals case, this Court has consistently held that a trial court must convert a Rule 12(b)(6) motion to a Mississippi Rule of Civil Procedure 56 motion to consider matters outside of the pleading. *See Delta MK, LLC v. Miss. Transp. Comm'n*, 57 So. 3d 1284, 1290 (Miss. 2011); *see also Bayer Corp.*, 32 So. 3d at 503; *Favre*, 212 So. 3d at 803. Therefore, we find that the trial court's failure to convert MORA's motion to dismiss as required constitutes reversible error.

¶23. This Court notes also that the Estate's complaint sufficiently "allege[d] a claim that, under some set of facts, could entitle the plaintiff to relief." *Doby v. S. Park Vill. Apartments*, 415 So. 3d 602, 606 (Miss. 2025) (citing *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 157-58 (Miss. 2011)). Here, taking the allegations as true, the Estate's complaint set forth sufficient facts that MORA was negligent in treating and in its representation that Denison was deceased in order to procure her organs for donation

purposes. *See id.* ("The plaintiff's burden of proof is at the evidentiary stage, not at the pleading stage[.]" (citing *Williford*, 55 So. 3d at 157-58)).

¶24.   Alternatively, the parties ask this Court to address whether MORA has immunity under Mississippi Code Section 41-39-135(a) (Rev. 2023). For the reasons stated below, we decline the parties' invitation to engage in such analysis.

¶25.   First, this Court has never interpreted the UAGA immunity provision. This Court has recognized that "statutory immunity is an affirmative defense." *Hinton v. Sportsman's Guide, Inc.*, 285 So. 3d 142, 149 (Miss. 2019). As such, "we have consistently enforced the general rule that affirmative defenses must be pled adequately and timely pursued." *Pruitt ex rel. Brooks v. Sargent*, 349 So. 3d 729, 732 (Miss. 2022) (citing *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006)). In this Court's opinion, the record is not fully developed at this time for us to adequately address whether MORA should be granted immunity or not.

¶26.   In addition to being a first impression for this Court, it appears that the granting of immunity under the UAGA may be dependent upon certain factual findings—whether the defendants acted in good faith and, without notice of revocation, in reliance upon the authorization made under the UAGA. But authorities across the United States are split on whether good faith is a question of fact or a question of law.[6] *See Schembre v. Mid-Am.*

---

[6]Within the UAGA, the Legislature enacted a uniformity provision that demonstrates its intent that other state's interpretations and applications of similar anatomical gift acts be given consideration when determining how Mississippi's act should be applied and construed. *See* Miss. Code Ann. § 41-39-145 (Rev. 2023) ("In applying and construing Sections 41-39-101 through 41-39-149, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.").

*Transplant Ass'n*, 135 S.W.3d 527, 532 (Mo. Ct. App. 2004); *Hinze v. Baptist Mem'l Hosp.*, Shelby Law No. 9, No. 27253 T.R., 1990 WL 121138, at *5 (Tenn. Ct. App. 1990); *Brown v. Del. Valley Transplant Program*, 615 A.2d 1379, 1383-84 (Pa. Super. Ct. 1992); *Kelly-Nevils v. Detroit Receiving Hosp.*, 526 N.W.2d 15, 19 (Mich. Ct. App. 1994). *Contra Sattler v. Nw. Tissue Ctr.*, 42 P.3d 440, 445 (Wash. Ct. App. 2002) ("Good faith involves a factual inquiry, and the actor's conduct must be judged in light of all the circumstances then present." (citing *Dutton v. Wash. Physicians Health Program*, 943 P.2d 298, 302 (Wash. Ct. App. 1997))); *Weiss v. President & Fellows of Harvard Coll.*, 267 N.E.3d 544, 555 (Mass. 2025); *see also Carey v. New England Organ Bank*, 843 N.E.2d 1070, 1082 (Mass. 2006) ("Lack of good faith, 'even though it involves a determination of a state of mind, is not automatically a jury question.'" (quoting *Aarco, Inc. v. Baynes*, 462 N.E.2d 1107, 1111 (Mass. 1984))). One state seems to suggest that such determination could be a mixed question of law and of fact. *See Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, No. 03-1177-MLB, 2005 WL 8160560, at *2-3 (D. Kan. 2005) (The court determined that immunity could be a question of law, not a question of fact, if the evidence undisputedly established that the defendant acted in good faith.). Likewise, some states recognize that good faith is defined as an "honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." *Lyon v. United States*, 843 F. Supp. 531, 533 (D. Minn. 1994) (internal quotation marks omitted) (quoting *Nicoletta v. Rochester Eye & Hum. Parts Bank, Inc.*, 519 N.Y.S. 2d 928 (N.Y.S. Ct. 1987)); *see also Sattler*, 42 P.3d at 443; *Weiss*, 267 N.E.3d at 554. As a result, it would be premature for this Court to state that the

good-faith and in-reliance requirements are questions of fact rather than questions of law.[7]

Thus, this Court refrains from interpreting or ruling on the applicability of immunity under the UAGA at this time.

¶27.   To clarify, this Court is not making a ruling concerning immunity under the UAGA. Rather, we are reversing the judgment of the trial court due to a procedural error, *i.e.*, failure to convert the Estate's motion to dismiss into a motion for summary judgment after improperly considering materials outside the complaint.

### II)   Did the trial court err by granting MORA's motion to dismiss in Brooke's individual case?

¶28.   Turning to Brooke's allegations, MORA argues that the trial judge properly dismissed Brooke's claims, and this Court agrees. Mississippi's wrongful-death statute authorizes children to bring direct lawsuits for their own benefit. *See* Miss. Code Ann. § 11-7-13 (Rev. 2019). A portion of Brooke's complaint would ordinarily be brought under the wrongful-death statute. But, as her counsel conceded, Brooke did not bring a wrongful-death action. Thus, Brooke has no separate claim. The trial judge properly dismissed her claims.

¶29.   Regarding the other alleged claims by Brooke, the trial court properly dismissed any claims in the nature of bystander liability because none exists. Although Brooke did not use the words "bystander recovery," she has alleged such in her complaint by seeking to recover

---

[7]Questions of law are to be decided by the court, whereas questions of fact are for the jury to decide. *See **Donald v. Amoco Prod. Co.**,* 735 So. 2d 161, 174 (Miss. 1999) ("While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury.").

for actions that MORA committed against Denison rather than acts or omissions committed against Brooke herself.

¶30.    In *Entergy Mississippi, Inc. v. Acey*, this Court stated that bystander claims result from the "negligently inflicted injury of a third person." *Entergy Miss., Inc. v. Acey*, 153 So. 3d 670, 674 (Miss. 2014) (quoting *Thing v. La Chusa*, 771 P.2d 814, 819 (Cal. 1989)). Bystander liability turns on the "foreseeability of emotional harm to the [plaintiff]." *Id.* at 672 (citing *Dillon v. Legg*, P.2d 912, 920 (Cal. 1968)). In *Entex, Inc. v. McGuire*, this Court adopted a multi-factor test for analyzing bystander claims:

> In determining, . . . whether defendant should reasonably foresee the injury to plaintiff, or, . . . whether defendant owes plaintiff a duty of due care, the courts take into account such as factors as the following:  (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Entex, Inc. v. McGuire*, 414 So. 2d 437, 444 (Miss. 1982) (alterations in original) (citation omitted) (quoting *Dillon*, 441 P.2d at 920). The factors presented by this test effectively work together to determine the "foreseeability of emotional harm to the [plaintiff]." *Acey*, 153 So. 3d at 672 (citing *Dillon*, 441 P.2d at 920).

¶31.    Brooke's claims fail prongs one and two of the *Entex* test. In the complaint, Brooke alleges that the negligence took place at the MORA facility with the exception of the initial pronouncement of death, which she alleges occurred at Anderson. Taking the complaint as true, Brooke was not located near the scene of the incident because she was not at the MORA

14

facility, thus failing prong one of the ***Entex*** test; she did not "contemporaneous[ly] observ[e] . . . the [incident]" for this same reason. ***Entex***, 414 So. 2d at 444 (quoting ***Dillon***, 441 P.2d at 920). Brooke learned about the injuries to Denison after the fact, which also fails prong two of the ***Entex*** test. As to the claim of the initial pronouncement of death, while Brooke and Denison were at Anderson, the "shock" of the alleged negligence did not occur until later and fails prong two of ***Entex***. ***Entex***, 414 So. 2d at 444 (quoting ***Dillon***, 441 P.2d at 920). The *res ipsa loquitur* and battery, outrage, and intentional-torts allegations also fail prongs one and two of ***Entex*** for the same reasons. Therefore, taking the allegations in the complaint as true, this Court finds that any of Brooke's claims in the nature of bystander liability fail the ***Entex*** test, and the trial court properly dismissed them.

## CONCLUSION

¶32. The trial court improperly granted MORA's motion to dismiss under Rule 12(b)(6) by considering materials outside of the Estate's complaint without converting it to a Rule 56 motion for summary judgment. As a result, we reverse the trial court's decision to grant MORA's motion to dismiss in the Estate's case, and we remand the case to the trial court for further proceedings consistent with this opinion.

¶33. In order to recover for injuries to her mother, Brooke would have had to recover under Mississippi's wrongful-death statute or under a theory of bystander liability. Brooke does not bring a wrongful-death action, and her allegations fail the ***Entex*** test for bystander liability. Therefore, Brooke has no actionable claims, and we affirm the trial court's decision to properly dismiss them.

15

¶34. **AS TO NO. 2024-CA-00644-SCT: AFFIRMED. AS TO NO. 2024-CA-00645-SCT: REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., AND ISHEE, J., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRANNING, J.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶35. This consolidated appeal should be resolved simply and quickly on the clear language of Mississippi Rule of Civil Procedure 12(b).

> ***If***, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, ***matters outside the pleading are presented to and not excluded by the court***, the motion ***shall*** be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56[.]

Miss. R. Civ. P. 12(b) (emphasis added).

¶36. The legal standard to review a Rule 12(b)(6) motion to dismiss for failure to state a claim is simple. The motion "tests the legal sufficiency of the complaint," ***Jourdan River Ests., LLC v. Favre***, 212 So. 3d 800, 802 (Miss. 2015) (internal quotation mark omitted) (quoting ***Cook v. Brown***, 909 So. 2d 1075, 1078 (Miss. 2005)) and "[o]ur review is limited to the face of the pleading." ***Id.*** (citing ***Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206, 1211 (Miss. 2001)). Further, the motion requires the court to accept the allegations of the complaint as true and then to determine whether the plaintiff will be unable to prove any set of facts in support of the claims asserted. ***State v. Bayer Corp.***, 32 So. 3d 496, 502 (Miss. 2010).

16

¶37.     This case presents a different twist because, in response to motions by Mississippi Organ Recovery Agency (MORA) and Dr. Schlessinger, Plaintiffs responded with more than four hundred pages of medical records that had not appeared in the complaint. Rule 12(b) clearly provides that if Defendants want the court to consider their Rule 12(b)(6) motion, Defendants *must* seek to exclude the "matters outside the pleading [that] are presented[.]" Here, Defendants did not. Because Defendants did not seek to exclude the matters outside the pleadings, I agree with the majority that the trial court erred by not converting the Rule 12(b)(6) motions to Rule 56 summary-judgment motions.

¶38.     In both cases, Plaintiffs attached to their response what appears to be the same documents. This ruling should apply to both cases, and the majority makes no attempt to differentiate the two cases.

¶39.     Having found reversible error, this Court should stop here and remand this case for further proceedings in the trial court. This decision should be without prejudice, and Defendants should be permitted to ask the trial court to exclude the additional documents and to proceed with the proper consideration of whether to dismiss the claims for failure to state a claim under Rule 12(b)(6). That is exactly what this Court did in *Favre*, 212 So. 3d at 803:

> Here, in considering the Rule 12(b)(6) motion, the circuit court did a skilled job in addressing and applying Mississippi law to each individual cause of action pleaded by Plaintiffs in this case. However, as demonstrated by the Rule 12(b)(6) motion hearing held in this matter, *numerous facts were presented to the circuit court that existed outside the pleadings*. Accordingly, we find that Defendants' Rule 12(b)(6) motion should have been converted into a motion for summary judgment, as provided by Rule 56.

**CONCLUSION**

17

> We reverse the circuit court's grant of Defendants' Rule 12(b)(6) motion and remand the matter for further proceedings consistent with this opinion.

In *Favre*, this Court remanded the case and did not then proceed with a de novo review of the trial court decision to grant a Mississippi Rule of Civil Procedure 12(b)(6) dismissal as we do here.

¶40. Despite this clear directive in *Favre*, the majority decides to consider whether the trial court was correct to dismiss Brooke Denison's claims for negligent and/or intentional misrepresentation; negligent and/or intentional infliction of emotional distress; lack of informed consent and lack of consent; breach of contract; and all wrongful-death claims or claims "in the nature of bystander liability." Maj. Op. ¶¶ 29-31. Since we are going to ignore the directions of *Favre* and remand these cases and all claims to the trial court, I will concur that Brooke's claims do not withstand Rule 12(b)(6) scrutiny and should be dismissed.

¶41. Similarly, I would consider whether the trial court erred by finding that MORA and Dr. Schlessinger were entitled to immunity under the Mississippi Uniform Anatomical Gift Act.

¶42. MORA's and Dr. Schlessinger's motions claim they are immune from civil liability under the Revised Mississippi Uniform Anatomical Gift Act (UAGA), Mississippi Code Sections 41-39-101 through -149 (Rev. 2023). When we review the factual allegations of the complaint, and accept the factual allegations as true, Plaintiff claims that MORA's and Dr. Schlessinger's liability solely arises from the donation of Paula Denison body and

18

MORA's acceptance and retention of the body. The complaint made the following allegations that we must be accept as true and use to evaluate whether a sufficient claim was stated:

17. Dr. McDonald determined that Paula Denison was brain dead, and advised her family, including Plaintiff who was present at the hospital at that time, that Paula Denison was brain dead. At 4:46 p.m., a nurse assigned by Anderson to provide care to Paula Denison contacted Defendant Mississippi Organ Recovery Agency ("MORA") for purposes of having MORA send a representative to Anderson to procure Paula Denison's organs, tissue, eyes, and bones. Subsequently, Defendant Dustin Shea Allen, M.D., a hospitalist chosen by Anderson to provide care to Paula Denison at Anderson, determined that Paula Denison was dead and pronounced her dead, with legal time of death noted to be 6:51 p.m. on March 17, 2022.

18. A MORA representative appeared at Anderson at approximately 6:00 p.m. and met with Plaintiff and other members of Paula Denison's family for purposes of convincing the family to allow MORA to take Paula Denison for purposes of harvesting her organs. At some point a MORA representative "huddled" with one of Anderson's physicians for purposes of facilitating harvesting of Paula Denison's organs.

19. At approximately 6:15 p.m., MORA's medical director, Defendant Shirley Schlessinger, M.D., determined that Paula Denison was suitable for organ donation. As a result of Anderson and MORA's plan to harvest Paula Denison's organs and other body parts, MORA's representations and urging, and based on and relying on Anderson's physicians' representations to the family and Plaintiff that Paula Denison was dead, Plaintiff and the other members of Paula Denison's family agreed to allow MORA to take Paula Denison's body for purposes of organ donation.

20. Paula Denison was taken by ambulance from Anderson hospital. It is believed that Paula Denison was taken to MORA's facility in Flowood, Mississippi. A MORA Organ Recovery Coordinator was assigned to Paula Denison for purposes of coordinating recovery of her organs.

21. On March 18, 2022 at approximately 2:00 a.m., MORA began monitoring Paula Denison. The MORA nurses noted Paula Denison's

status over time, including vital signs, urine output, and fluid and medication administration.

22. While under the care of MORA, Paula Denison received various medical treatments and procedures, including laboratory testing of her blood and urine, culturing of blood and sputum samples, fluid administration, medication administration, vital sign monitoring, and surgical procedures. The surgical procedures included incising Paula Denison's abdomen and obtaining biopsies of her liver to test for acceptable organ donation. On March 18, 2022, a MORA Organ Placement Coordinator attempted to place Paula Denison's liver and kidneys, and found matching potential recipients for Paula Denison's liver and kidneys.

23. No later than 7:00 p.m. on March 18, 2022, Paula Denison exhibited neurological function inconsistent with death and/or brain death. Upon discovering that Paula Denison was not dead, MORA notified one or more Anderson physicians of her neurological function on the evening of March 18.

24. Notwithstanding that MORA had determined that Paula Denison was not dead or "brain dead," through act, omission, order, or decision of Anderson physicians and/or MORA physicians, Paula Denison inappropriately remained at MORA through the night of March 18. Neither Plaintiff nor any member of Paula Denison's family was notified on March 18 that Paula Denison was not dead, but instead was alive.

25. Paula Denison's exhibited neurological functions inconsistent with death included spontaneous respirations, a reactive pupil, and the presence of coughing and gag reflexes. She progressively exhibited increased neurological function, and became responsive to stimuli, including light and pain.

26. Notwithstanding, without notifying Plaintiff or other members of Paula Denison's family, and without the consent - informed or otherwise - of Paula Denison, Plaintiff, or other members of Paula Denison's family, MORA retained Paula Denison at its organ harvesting facility for the intended purposes of harvesting her organs. Retaining Paula Denison at its facility with actual knowledge that she was not dead, MORA did not provide appropriate medical care or treatment to Paula Denison.

20

27. MORA did not notify Plaintiff or any member of Paula Denison's family that Paula Denison was still alive. Instead, MORA, without the consent of Paula Denison, Plaintiff, or any member of her family, and with actual knowledge that Paula Denison was not dead, continued to administer increasing doses of medications to Paula Denison, throughout the night of March 18 and into the morning hours of March 19.

28. The MORA records do not reflect the identity of the physician(s) who ordered medication Administration, or the nurses or other MORA representatives who administered the medications to Paula Denison. The MORA records reflect that on March 18, 2022, at approximately 9:00 p.m., Defendant Schlessinger ordered an arterial blood gas test on Paula Denison, the results of which were available and reported back shortly after 9:00 p.m. that same evenmg.

29. By 9:00 a.m. on March 19, 2022, while still held at MORA and notwithstanding continued increasing levels of medication administration, Paula Denison continued to improve neurologically, and was exhibiting reactive pupils, spontaneous respirations, opening of her mouth wide to gag when suctioned, physically flexing and moving in response to painful stimuli, and physiologically reacting to pain by exhibiting reactive changes in her blood pressure and heart rate.

30. Prior to March 19, 2022 at 10:16 a.m., MORA determined that Paula Denison was not an acceptable organ donor, because she "did not meet neurologic criteria", i.e., she was not dead. On March 19, 2022, at 10:16 a.m., MORA, through a MORA Tissue Recovery Coordinator, without the consent of Paula Denison, Plaintiff, or any member of her family, discharged Paula Denison from MORA via ambulance and had her transported back to Defendant Anderson's hospital in Meridian.

31. The extent of individual MORA physicians', employees' and/or other representatives' acts or omissions with respect to Paula Denison is unknown at this time, as the MORA records do not reflect the identity of the individual physicians or nurses who ordered or administered medications or treatment, monitored Paula Denison, had primary responsibility for her care or treatment at material times, and/or made decisions relative to whether Paula Denison remained a viable organ donor and/or should have been provided additional care or treatment at MORA. . . .

21

32. Paula Denison was readmitted to Anderson hospital on March 19, 2022 at approximately 12:03 p.m. Upon readmission, Dr. Allen noted that MORA had informed that MORA could no longer keep Paula Denison at their facility because she was no longer dead. Upon readmission to the Anderson ICU on March 19, the Anderson providers attempted to transfer Paula Denison to other facilities, including University of Mississippi Medical Center in Jackson, Mississippi, and/or Mobile Infirmary, where neurologists were available to care for Paula Denison.

33. Paula Denison deteriorated after admission to the Anderson ICU. After numerous consults with Plaintiff and Paula [sic] Denison's other family members relative to her prognosis, and whether and to what extent Plaintiff and the other family members desired to provide comfort care measures to her, and/or classify her as a DNR, Paula Denison exhibited asystole on the monitors, and she was again pronounced deceased by Dr. Allen on March 20, 2022 at 6:05 a.m.—three days after Paula Denison was initially pronounced deceased by Dr. Allen.

¶43. The Rule 12(b)(6) motions filed by MORA and Dr. Schlessinger allege that no claim may be asserted due to the statutory immunity afforded to them by the UAGA.

¶44. Mississippi Code Section 41-39-135 provides:

(a) *Any person who, in good faith and acting in reliance upon and authorization made under the provisions* of Sections 41-39-101 through 41-39-149 and without notice of revocation thereof, *takes possession of, performs surgical operations upon, removes tissue, substances or parts from the human body, or refuses such a gift, and any person who unknowingly fails to carry out the wishes of the donor* according to the provisions of Sections 41-39-101 through 41-39-149 *shall not be liable for damages in a civil action brought against him for that act*.

(b) Neither the person making an anatomical gift nor the donor's estate is liable for any injury or damage that results from the making or use of the gift.

(c) In determining whether an anatomical gift has been made, amended, or revoked under Sections 41-39-101 through 41-39-149, a person may rely upon representations of an individual listed in Section 41-39-117(a) (2), (3), (4), (5), (6), (7), or (8) relating to the individual's relationship to the donor or prospective donor unless the person knows that the representation is untrue.

22

Miss. Code Ann. § 41-39-135 (Rev. 2023) (emphasis added).

¶45. The complaint alleged that Paula Denison's adult children authorized MORA to take possession of Denison's body as an anatomical gift after a physician at Anderson Regional Medical Center pronounced Denison's death on March 17, 2022. Thus, under Mississippi Code Section 41-39-117 (Rev. 2023), the well-pleaded allegations of the complaint establish that MORA and Dr. Schlessinger's actions were within the scope and purpose of the UAGA. And, as to Dr. Schlessinger, the complaint alleged that she acted within the course and scope of her employment with MORA at all material times.

¶46. It is appropriate to consider immunity in the Rule 12(b)(6) context. In *Newsome v. Shoemake*, 234 So. 3d 1215, 1220 (Miss. 2017), this Court considered the appeal of the grant of a Rule 12(b)(6) motion based on judicial immunity. The specific issue considered was "[w]hether the doctrine of judicial immunity operates to bar [the plaintiff]'s claims against [two defendant chancellors]." *Id.* at 1223-26. The Court then concluded:

> [A]ccepting [the plaintiff]'s claims as true, as this Court is bound to do at the motion to dismiss stage, [the defendant chancellors] are immune because, at the time the alleged acts giving rise to [the plaintiff]'s claims occurred, both chancellors exercised jurisdiction over the subject matter of the conservatorship.

*Id.* at 1225-26. In *Newsome*, it was clear that the Court considered the factual allegations of the complaint and accepted them as true. Simply no authority exists for the majority's conclusion that "the record is not fully developed at this time for us to adequately address whether MORA should be granted immunity or not." Maj. Op. ¶ 25.

23

¶47. The Rule 12(b)(6) motions to dismiss for failure to state a claim filed by MORA and Dr. Schlessinger assert that they are statutorily immune from civil immunity available under the UAGA. Indeed, the complaint does not allege that MORA or Dr. Schlessinger acted without "good faith" or without "authorization." § 41-39-135(a). Further, the complaint alleged that MORA's and Dr. Schlessinger's actions occurred while MORA had "possession of, perform[ed] surgical operations upon, remove[d] tissue, substances or parts from the human body, or refuse[d] such a gift." *Id.* Therefore, MORA and Dr. Schlessinger are entitled to the statutory immunity under Section 41-39-135(a), and no other allegation would subject MORA or Dr. Schlessinger to liability.

¶48. In conclusion, I agree with the majority that the trial court erred by not converting the Rule 12(b)(6) motions to Rule 56 summary-judgment motions. Rule 12(b)(6) motions were filed in both cases, however, and Plaintiffs attached to their response, in both cases, what appears to be the same documents. I am of the opinion that this ruling should apply the same in both cases. Yet the majority makes no attempt to differentiate the two cases or to explain how we can affirm the dismissal of the bystander-liability claim when Rule 12(b) requires that we convert it to a Rule 56 summary judgment. But since we go further, I follow the majority's lead, and I would affirm the dismissal of all claims against MORA and Dr. Schlessinger.

**BRANNING, J., JOINS THIS OPINION.**